UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 19-224-MWF (KSx) | **Date:** May 17, 2019 |
| **Title:** StoAmigo International, LLC v. Vanbex Group, Inc., et al. | |

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:    Court Reporter:
Rita Sanchez    Not Reported

Attorneys Present for Plaintiff:    Attorneys Present for Defendant:
None Present    None Present

**Proceedings (In Chambers):**    ORDER RE: MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [33]

Before the Court is Defendants Vanbex Group, Inc. ("Vanbex"), Lisa Cheng, and Kevin Hobbs' Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion"), filed on April 11, 2019. (Docket No. 33). Plaintiff StoAmigo International, LLC filed an Opposition on April 22, 2019. (Docket No. 35). Defendants filed a Reply on April 29, 2019. (Docket No. 37). The Court has read and considered the papers filed on the Motion and held a hearing on May 13, 2019.

For the reasons discussed below, the Motion is **DENIED** *in part* and **GRANTED** *in part* as follows:

- **DENIED** to the extent Vanbex seeks dismissal for lack of personal jurisdiction. The parties previously agreed to a forum selection clause that unambiguously designates California for all disputes arising out of the Services Agreement; and

- **GRANTED** to the extent Defendants Cheng and Hobbs seek dismissal for lack of personal jurisdiction. Plaintiff fails to demonstrate or allege that Defendants Cheng and Hobbs have any contacts, let alone minimum contacts, with California to establish personal jurisdiction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-224-MWF (KSx)                     Date:  May 17, 2019
Title:      StoAmigo International, LLC v. Vanbex Group, Inc., et al.

## I.   BACKGROUND

On January 10, 2019, Plaintiff commenced this action.  (*See generally* Complaint (Docket No. 1)).

The operative Complaint contains the following allegations:

Plaintiff, a computer technology innovation company, is a Wyoming corporation with its principal place of business in Las Vegas, Nevada.  (*Id.* ¶¶ 1, 8).  Plaintiff's "sole member is domiciled in the state of Wyoming."  (*Id.*).

Defendant Vanbex is a corporation organized and existing under the laws of Canada and has its principal place of business in Vancouver, Canada.  (*Id.* ¶ 2).  Defendants Cheng and Hobbs are both residing in Vancouver.  (*Id.* ¶¶ 3–4).  Cheng "was a founder of Vanbex in 2013 and has, at all times since, been an officer of Vanbex."  (*Id.* ¶ 23).  Hobbs "has been the CEO [Chief Executive Officer] of Vanbex since 2015."  (*Id.*).

Beginning in the fall of 2017, Plaintiff "became aware of Vanbex and its purported expertise in conducting token sales" and "was particularly interested in Vanbex due to Vanbex's claimed success in not only raising over $30 million in its own token sale, but due to Vanbex's claimed success in raising funds for other entities."  (*Id.* ¶ 34).  After seeing Vanbex's promotional materials, Plaintiff first contacted Vanbex on January 5, 2018, and an initial telephone call occurred between Plaintiff and Vanbex on January 8, 2018.  (*Id.* ¶ 35).

On that call, Plaintiff informed Vanbex that it was looking for assistance with a potential token sale and Cheng informed Plaintiff of Vanbex's "success with selling tokens for other clients . . . [and] would do the same for Plaintiff."  (*Id.* ¶¶ 35–36).  Cheng also informed Plaintiff that Vanbex charges a monthly fee of between $18,000 and $22,000 for its work.  (*Id.* ¶ 36).  After the call, Plaintiff sent over a white paper that it had been preparing to allow Vanbex "to better understand the project and to provide it with a view of what the present status of the project was so that it could determine what would be needed to complete the project."  (*Id.* ¶ 37).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-224-MWF (KSx)          **Date:** May 17, 2019
**Title:**     StoAmigo International, LLC v. Vanbex Group, Inc., et al.

On January 26, 2018, Vanbex sent a contract proposal to Plaintiff, quoting $40,000 a month in service fees and a percentage of the proceeds from the token sale. (*Id.* ¶ 38). The negotiation "continued for more than two subsequent months" throughout which Plaintiff made clear to Vanbex that Plaintiff "was only considering Vanbex due to its purported ability . . . to directly sell tokens to potential purchasers." (*Id.* ¶ 40). Two more calls were held between Plaintiff and Vanbex in which Vanbex stated that it "would be able to raise funds in a token sale from its own pool of investors" and that it was "confident that it would be able to raise significant funds." (*Id.* ¶¶ 41–43).

On April 4, 2018, Plaintiff and Vanbex, through Hobbs, executed a Services Agreement. (*Id.* ¶ 45). The Services Agreement set forth, among other things, Vanbex's promise to seek to directly raise funds, the timeline, service fees, and commission. (*Id.* ¶¶ 46–56). The Services Agreement also contained the following choice-of-law and choice-of-forum clause:

> This Agreement will be governed by and construed in accordance with the laws of the State of California and the federal laws of the United States of America applicable thereunder, without regard to principles of conflicts of laws. The parties agree that any action relating to this Agreement will be instituted and prosecuted in a court of competent jurisdiction in California, United States of America and each party waives its right to a change of jurisdiction.

(Declaration of Lisa Cheng Dated April 10, 2019 ("Cheng Decl.") ¶ 4, Ex. 1).

Plaintiff alleges that Vanbex did not "perform its obligations under the Services Agreement"; "introduce Plaintiff to a single investor or exchange"; or "make a good faith effort to directly raise funds for Plaintiff through Plaintiff's token sale." (Compl. ¶¶ 54–56). Plaintiff alleges that, among other reasons, Vanbex "would have needed appropriate regulatory licenses from Canadian and U.S. regulatory agencies." (*Id.* ¶ 57).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-224-MWF (KSx)          **Date:** May 17, 2019
**Title:**     StoAmigo International, LLC v. Vanbex Group, Inc., et al.

Plaintiff alleges that the "sum total for Plaintiff of having ever interacted with Vanbex was that it wasted valuable time and resources with Vanbex, and Vanbex never fulfilled, and never had the intention of fulfilling, its obligation." (*Id.* ¶ 73). Plaintiff's token sale "was set back for months due to its engagement of Vanbex . . . [and] [u]nfortunately, during that time, the market potential for token sales contracted dramatically." (*Id.* ¶ 74). As a result, "engaging Vanbex caused Plaintiff to miss the timeframe in which it otherwise would have been able to conduct a successful sale of [its tokens]." (*Id.*).

Plaintiff asserts four claims for relief: (1) fraud in the inducement against all Defendants; (2) negligent misrepresentation against all Defendants; (3) breach of contract against Vanbex; and (4) breach of the covenant of good faith and fair dealing against Vanbex. (*Id.* ¶¶ 75–111).

## II.    REQUEST FOR JUDICIAL NOTICE

In conjunction with the Opposition, Plaintiff requests that the Court take judicial notice of two exhibits: (1) Notice of Application re: Civil Forfeiture Action in Rem, an application filed in the Supreme Court of British Columbia requesting a temporary freeze on certain of Defendants' assets; and (2) the Order Made After Application re: Notice of Application re: Civil Forfeiture Action in Rem, the Supreme Court of British Columbia's granting the temporary freeze. (Request for Judicial Notice ("RJN") (Docket No. 36)).

Defendants make a number of objections to the RJN. (Reply at 8–9). The Court, however, does not rely on the information in the two exhibits in ruling on the Motion and would reach the same rulings regardless of whether it considered these exhibits. Accordingly, the RJN is **DENIED** *as moot*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 19-224-MWF (KSx)          Date: May 17, 2019
Title:     StoAmigo International, LLC v. Vanbex Group, Inc., et al.

## III. DISCUSSION

### A. Forum Selection Clause

A valid forum selection clause may designate a particular federal or state court as a forum for disputes. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (approving application of the Supreme Court's forum selection clause jurisprudence to the domestic context and holding that "forum selection clauses are presumptively valid"). Absent some evidence submitted by the party opposing enforcement of the clause to establish that "the inclusion of the clause in the agreement was the product of fraud or overreaching" or that "the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced," a forum select clause should be respected as the expressed intent of the parties. *Id.* at 1140–41 (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–19 (1972)).

Here, Vanbex does not dispute the existence or validity of a forum selection clause in the Services Agreement. (Mot. at 1). Instead, Vanbex offers two reasons why the forum selection clause should not be enforced, both of which the Court finds unavailing:

*First*, Vanbex argues that the Court should "decline to enforce a forum-selection clause if the application of the clause would be unfair or unreasonable." (*Id.* at 8). Vanbex specifically points to California Code of Civil Procedure section 410.40, which states as follows:

> Any person may maintain an action or proceeding in a court of this state against a foreign corporation or nonresident person where the action or proceeding arises out of or relates to any contract, agreement, or undertaking for which a choice of California law has been made in whole or in part by the parties thereto and which (a) is a contract, agreement, or undertaking, contingent or otherwise, relating to a transaction involving in the aggregate not less than one million dollars ($1,000,000), and (b) contains a provision or provisions under which the foreign corporation or nonresident agrees to submit to the jurisdiction of the courts of this state.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-224-MWF (KSx)          **Date:** May 17, 2019
**Title:**    StoAmigo International, LLC v. Vanbex Group, Inc., et al.

Cal. Code Civ. Proc. § 410.40.

Vanbex contends that this action "does not relate to a transaction involving at least one million dollars," precluding enforcement of the forum-selection clause. (*Id.* at 9).

The Court disagrees because section 410.40 "does not limit California's jurisdiction, much less this [C]ourt's jurisdiction." *HCT Packaging, Inc. v. TM Int'l Trading Limited*, No. 13-CV-8443-RGK (SHx), 2014 WL 12696776, at *3 (C.D. Cal. Mar. 10, 2014) (rejecting the argument that section 410.40 "precludes enforcement of a forum selection clause between non-residents when the amount-in-controversy is not over $1,000,000" and noting that section 410.40 was implemented "to prevent dismissal for forum non conveniens in certain circumstances") (citation omitted).

In response, Plaintiff appears to misinterpret Vanbex's argument and notes that to the extent Vanbex has "waived the forum selection clause, Plaintiff agrees to no longer seek to enforce it, provided this action is transferred to the District of Nevada." (*Id.* at 1–2). But Plaintiff confuses Vanbex's argument that the forum selection clause should not be enforced for the argument that the forum selection clause is invalid.

*Second*, Vanbex argues that even if the forum selection clause is enforceable, the Court should refrain from exercising its jurisdiction because "there is no logical nexus between the parties or the case and California." (Mot. at 9–10). For support, Vanbex points to *Quanta Computer Incorporated v. Japan Communications Incorporated*, 21 Cal. App. 5th 438, 230 Cal. Rptr. 3d 334 (2018). (*Id.*). But *Quanta* is factually distinguishable.

There, the plaintiff, a Taiwanese corporation, entered into a contract to manufacture and sell cell phones with the defendant, a Japanese corporation. *Quanta*, 21 Cal. App. 5th at 440–41. The parties, like here, negotiated a forum selection clause mandating that any dispute be resolved in a California court applying California law. *Id.* at 441. Also like here, nothing in the creation, performance, or alleged breach of the contract has any connection to California. *Id.* The plaintiff then commenced an action in the Los Angeles County Superior Court alleging breach of contract, and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-224-MWF (KSx)          **Date:** May 17, 2019
**Title:**     StoAmigo International, LLC v. Vanbex Group, Inc., et al.

defendant subsequently commenced a separate action in Japan against the plaintiff alleging a similar breach of contract claim. *Id.* at 442. The Superior Court dismissed the plaintiff's action. *Id.*

The California Court of Appeal first acknowledged that "section 410.40 recognizes the existence of jurisdiction in California for an aggrieved party to file a lawsuit against a foreign corporation for wrongs that have occurred abroad." *Id.* at 450. The court nevertheless affirmed the dismissal of the entire action, but on forum non conveniens grounds rather than for lack of personal jurisdiction. *Id.* In considering the relevant public interest factors, the court concluded that "California's public interest certainly is less than that of the Asian countries directly related to the dispute." *Id.* at 448.

Here, unlike in *Quanta*, there is no other pending action. Nor has Vanbex moved for dismissal based on forum non conveniens. Rather, Vanbex has moved for dismissal based on lack of personal jurisdiction, something to which it consented in the forum selection clause. *See, e.g.*, *S.E.C. v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) (noting that "a party has consented to personal jurisdiction when the party took some kind of affirmative act—***accepting a forum selection clause***, submitting a claim, filing an action—that fairly invited the court to resolve the dispute between the parties") (citations omitted and emphasis added); *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 823 (N.D. Cal. 2015) (denying motion to dismiss for lack of personal jurisdiction and noting that because the defendant "is subject to the forum-selection clause, he has consented to personal jurisdiction here, regardless of the scope of his contacts").

At the hearing, Vanbex pointed to *Global Packaging, Inc. v. Superior Court*, 196 Cal. App. 4th 1623, 127 Cal. Rptr. 3d 813 (2011), and argued that at least one California state court divides the issues of forum selection and personal jurisdiction. But *Global Packaging* is distinguishable. There, the California Court of Appeal considered a license agreement between a Pennsylvania corporation and a Delaware corporation (with its principal place of business in California) with a specific provision stating that "[a]ny controversy or claims arising out of or relat[ing] to this Agreement

---

**CIVIL MINUTES—GENERAL**                      7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 19-224-MWF (KSx)              **Date:**  May 17, 2019
**Title:**      StoAmigo International, LLC v. Vanbex Group, Inc., et al.

shall be ***venued*** only in the state or federal court in . . . Orange County, California." 196 Cal. App. 4th at 1627.  In quashing the summons, the California Court of Appeal concluded that the "trial court improperly conflated venue, forum, and jurisdiction to imply Global Packaging's consent to personal jurisdiction." *Id.*  The appellate court was particularly concerned by the fact that the "trial court took a clause referring to 'venue,' translated 'venue' into 'forum,' and then extended 'forum' to include personal jurisdiction." *Id.* at 1635.

But *Global Packaging* is also distinguishable because the Ninth Circuit has long held that courts "apply federal contract law to interpret the scope of a forum-selection clause even in diversity actions, such as this one." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (affirming dismissal on forum non conveniens grounds where the plaintiff brought suit in Washington state even though the parties entered into share purchase agreements designating California state court as the forum) (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 512–13 (9th Cir. 1988)).

The Court is thus bound by the long-established holding that federal law governs the enforcement and interpretation of a forum selection clause.  And in so doing, the fact that the parties entered into a valid, enforceable forum selection clause designating California for all disputes constitutes consent to personal jurisdiction here.  *See, e.g.*, *Prods. and Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-CV-00669-YGR, 2017 WL 201703, at *7 (N.D. Cal. Jan. 18, 2017) (concluding the parties' agreement "explicitly provides contractual permission to file suit in California" and that "forum selection clause here constitutes consent to jurisdiction in California").

Having reached the above conclusion, the Court need not address Vanbex's contention that its contacts with California are insufficient under the standards for general or specific jurisdiction.

Accordingly, the Motion is **DENIED** to the extent Vanbex seeks dismissal for lack of personal jurisdiction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-224-MWF (KSx)                     Date:  May 17, 2019
Title:      StoAmigo International, LLC v. Vanbex Group, Inc., et al.

### B. Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction. *See, e.g.*, *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (internal quotation marks and citations omitted). "A plaintiff may not simply rest on the bare allegations of the complaint . . ., [b]ut uncontroverted allegations must be taken as true, and conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (internal quotation marks and citations omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [non-resident defendants]." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "California's long-arm statute," Cal. Code Civ. Proc. § 410.10, "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Id.*  Because section 410.10 "is coextensive with federal due process requirements . . ., the jurisdictional analyses under state law and federal due process are the same." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (internal quotation marks and citation omitted).

It is obvious that general jurisdiction exists over neither Cheng nor Hobbs. Therefore, the Motion will be analyzed in terms of specific jurisdiction.

Courts may "exercise specific jurisdiction over a non-resident defendant only when three requirements are satisfied: (1) the defendant either purposefully directs its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of personal jurisdiction comports with fair play and substantial justice, i.e., it is reasonable." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (internal quotation marks and citation omitted). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-224-MWF (KSx)           **Date:** May 17, 2019
**Title:**     StoAmigo International, LLC v. Vanbex Group, Inc., et al.

*Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

       Here, the Court need not address the factors in detail because, among other reasons, neither Defendant Cheng nor Defendant Hobbs resides in California and none of the parties has business ties or conducts business in California. Indeed, Plaintiff "candidly acknowledge[s] that the [Services Agreement] provides the only basis for [the Court] to exercise personal jurisdiction over [ ] Defendants" and only "commenced the action in this district in order to avoid a motion to transfer." (Opp. at 8–9).

       The Court, however, notes that Defendants Cheng and Hobbs are not parties to the Services Agreement and Plaintiff has provided no reason why they should be bound by the forum selection clause that binds Vanbex. Plaintiff, for instance, does not allege that there is an alter ego relationship between Vanbex and Defendants Cheng and Hobbs. And as pointed out by Defendants Cheng and Hobbs, it is telling that Plaintiff has asserted its two contract-related claims against only Vanbex. (Reply at 1). The Court thus lacks specific jurisdiction over Defendants Cheng and Hobbs.

       At the hearing, Plaintiff argued that the forum selection clause, as discussed above, can and should be enforced against Defendants Cheng and Hobbs. Plaintiff contended that while Defendants Cheng and Hobbs are neither signatories to the Services Agreement, they are officers and directors of Vanbex.

       The Court disagrees because being an officer or director, by itself, is insufficient. For a non-party to be bound by a forum-selection clause, the non-party is typically "(1) a third-party beneficiary to the contract; (2) a successor in interest to the contract; or (3) an agent intended to benefit from the clause." *Sawyer v. Bill Me Later, Inc.*, No. 10-CV-4461-SJO (JCx), 2011 WL 7718723, at *4 (C.D. Cal. Oct. 21, 2011) (citing *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 745–48 (9th Cir. 1993)). Here, the Services Agreement between Plaintiff and Vanbex was one where Vanbex would directly raise funds for Plaintiff. There is no indication that Defendants Cheng and Hobbs are third-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-224-MWF (KSx)           **Date:** May 17, 2019
**Title:**     StoAmigo International, LLC v. Vanbex Group, Inc., et al.

party beneficiaries to the Services Agreement. Nor is there an allegation, let alone evidence, that Cheng and Hobbs are alter egos of Vanbex.

Accordingly, the Motion is **GRANTED** to the extent it seeks dismissal of Defendants Cheng and Hobbs for lack of personal jurisdiction.

### C. Transfer of Venue

Plaintiff requests that this action be transferred to the District of Nevada pursuant to 28 U.S.C. § 1631. (Opp. at 6).

Section 1631 provides as follows:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

*Id.*

A transfer under § 1631 is therefore appropriate if "(1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice." *Cruz-Aguilera v. INS*, 245 F.3d 1070, 1074 (9th Cir. 2001).

Here, Plaintiff has not met its burden to show that the District of Nevada would have personal jurisdiction over Defendants Cheng and Hobbs. Plaintiff argues that Defendants Cheng and Hobbs took numerous actions specifically directed at it, such as "discussions between Plaintiff and Vanbex prior to the execution of the Services Agreement"; knowledge that Plaintiff "entered into the Services Agreement based on false representations or later ratified those representations"; and knowledge that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-224-MWF (KSx)          **Date:** May 17, 2019
**Title:**     StoAmigo International, LLC v. Vanbex Group, Inc., et al.

Plaintiff is located in Nevada. (Opp. at 11–13 (citations omitted)). Plaintiff argues that "this is not an instance of mere untargeted negligence" and instead one where Defendants "expressly aimed [their actions] at a company with its principle place of business in Nevada." (*Id.* at 13).

      The Court disagrees because a "contract alone does not automatically establish minimum contacts in [Plaintiff's] home forum, as required to establish [Defendants Cheng and Hobbs are] subject to specific personal jurisdiction in the forum state." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (concluding that "the oral agreement and [the defendant's] two trips to California did not create sufficient minimum contacts to subject him to personal jurisdiction there"). Instead, there must be specific actions that create a substantial connection with Nevada "beyond mere random, fortuitous, or attenuated contacts." *Id.*

      The Court also views as particularly instructive the Ninth Circuit's opinion in *Picot*. There, under an oral agreement, the defendant "was obligated to develop the technology, arrange for its testing, and assist in fund-raising and marketing," and would receive a "one-third interest in any profits from the sale of the technology, $20,000 per month, and reimbursement of his expenses to develop and adapt the technology." *Id.* at 1212. The agreement was formed in Michigan, where the defendant lived, where it was understood that he would perform the majority of his work, and where he did indeed discharge most of his contractual duties. *Id.*

      The plaintiff first contended that "the oral agreement created a substantial connection between [the defendant] and California because [the plaintiff], a co-party to the agreement, fulfilled his obligations under the agreement by seeking out investors and buyers in California." *Id.* at 1212–13. The Ninth Circuit disagreed, noting that the inquiry is limited to examining contacts that proximately result from actions by the defendant and the fact that a contract "envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." *Id.* at 1213 (internal quotation marks and citation omitted).

**CIVIL MINUTES—GENERAL**                                                        12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-224-MWF (KSx)           **Date:** May 17, 2019
**Title:**     StoAmigo International, LLC v. Vanbex Group, Inc., et al.

       The plaintiff then argued that "the requisite contacts were created by the parties' actual course of dealing" and specifically pointed to the defendant's two trips to California. *Id.* The Ninth Circuit again disagreed, first noting that the "limited nature of the transaction" and that neither trip was envisioned in the initial oral agreement. *Id.* Rather, they both related to a planned presentation to some clients where the defendant assisted and played a relatively small role. *Id.* Moreover, the Ninth Circuit noted that, among other things, the "bulk of [the defendant's] efforts in developing and marketing the technology were centered in Michigan"; he worked out of his office in Sterling Heights, Michigan; and he contracted with the University of Michigan and met with possible purchasers in Michigan. *Id.*

       Unlike the defendant's actions in *Picot*, Cheng and Hobbs' actions are even more attenuated. Plaintiff does not allege any contacts with Nevada or any particular event in Nevada that would give rise to specific jurisdiction in Nevada. As pointed out by Cheng and Hobbs, the only mention of Nevada in the Complaint is identifying Plaintiff's principal place of business. (Reply at 5 (citing Compl. ¶ 1)). Indeed, it was Plaintiff who, "[a]fter seeing Vanbex's promotional materials," first contacted Vanbex and initiated a telephone call. (*See* Compl. ¶ 35).

       The Court thus concludes that Plaintiff has not met its burden to show that there is personal jurisdiction over Defendants Cheng and Hobbs in the District of Nevada. *See, e.g., Rapiscan Sys., Inc. v. Garnett*, No. 18-CV-10780-PA (Ex), 2019 WL 1883911, at *5 (C.D. Cal. Mar. 8, 2019) (concluding no personal jurisdiction in California and noting that "[a]s to the parties' prior negotiations, [the defendant] remained in Arizona throughout the negotiation process and signed the Promissory Note while in Arizona").

       Accordingly, Plaintiff's request to transfer this action to the District of Nevada as to Cheng and Hobbs is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-224-MWF (KSx)  **Date:** May 17, 2019
Title:     StoAmigo International, LLC v. Vanbex Group, Inc., et al.

## IV.   CONCLUSION

The Motion is **DENIED** *in part* and **GRANTED** *in part*. The Motion is **DENIED** as to Vanbex and **GRANTED** as to Cheng and Hobbs. Cheng and Hobbs are **DISMISSED** *without prejudice* for lack of jurisdiction.

Plaintiff's request to transfer this action as to the District of Nevada as to Cheng and Hobbs is **DENIED**.

Vanbex shall answer the Complaint on or before **May 28, 2019**.

IT IS SO ORDERED.